COOK *v*. STATE.

Opinion delivered October 6, 1913.

1. INDICTMENT—PRESUMPTION AS TO REGULARITY.—When an indictment is properly returned into court, it will be presumed that it was duly found with the concurrence of the requisite number of the grand jury. (Page 387.)

2. BURGLARY—SUFFICIENCY OF EVIDENCE.—When the evidence showed that certain premises were left at 12 midnight and opened at 4:10 A. M., and that when opened a glass door was broken out, and goods missing, *held* that from this evidence, the jury was justified in inferring that the premises were broken into in the night time. (Page 388.)

3. WITNESS—IMPEACHMENT OF ACCUSED.—When a defendant takes the stand in his own behalf he thereby becomes subject to impeachment, the same as any other witness. (Page 389.)

Appeal from Cross Circuit Court; *W. J. Driver*, Judge; affirmed.

The defendant, Willis Cook, was convicted of the crime of burglary, and from the judgment of conviction has duly prosecuted an appeal to this court.

Howell McElroy testified that he and the defendant, Willis Cook, were at the electric light plant in the town of Wynne, in Cross County, Arkansas, on the night of the 21st of May, 1912. That about 3 o'clock A. M. they left the light plant, went up town, and broke into the saloon of E. N. McElroy. That they took therefrom some whiskey in pint bottles and also some cigars. That they then went back to the light plant and stayed until about daylight, when they came back up town to a restaurant and ate breakfast. That they then went to Willis Cook's house and went to bed for a short time and then got up and went fishing.

E. N. McElroy testified: On the night of May 21, 1912, I locked up my saloon and left it about 12 o'clock. The next morning I missed twenty dollars, consisting of quarters, dimes and nickels. I also missed from a dozen to three dozen pints of whiskey called "Red Top Rye" and about the same amount of Barbee whiskey. A case of beer was also taken. The whiskey and beer were worth about twenty-five dollars. On the night in question Howell McElroy and the defendant were in my saloon. I refused to let Howell McElroy have any whiskey. About 11 o'clock they came back in the saloon, and the defendant again asked me to let Howell McElroy have some whiskey. I again refused, and the defendant said they would get it before morning if they had to take it. They then walked out of the saloon together.

The bartender of the saloon testified that he opened the saloon the next morning about 4:10. That the glass door was broken and twenty dollars in change that was usually left there was gone.

Other evidence for the State tended to show that Howell McElroy and the defendant ate breakfast in a

restaurant next to the saloon the morning after the burglary, and, later in the day, went fishing. That they had some whiskey in a bottle, labeled "Rep Top Rye." Several days after this the defendant was seen at Fair Oaks with three or four dollars in small change.

The defendant testified in his own behalf and denied that he broke into the saloon on the night in question, or at any other time. On cross examination he admitted that a few days after this he had several dollars in money, consisting of nickels and dimes, but said that he won it shooting craps.

An employee of the light plant testified that on the night the burglary was charged to have been committed Howell McElroy and the defendant were at the light plant. He said that about 3 o'clock in the morning Howell McElroy went up town and brought back some whiskey but that the defendant did not go with him; that the defendant, during the time McElroy was gone, was lying on the grass asleep, and stayed there until about daylight the next morning.

*J. C. Brookfield,* for appellant.

1. The court erred in overruling the motion to quash the indictment which raised the point that a true bill against appellant alone had not been concurred in by twelve of the grand jurors, without hearing evidence in support of said motion. Kirby's Dig., § 2223, and cases cited.

2. Appellant was entitled to the peremptory instruction to acquit, requested at the conclusion of the State's testimony. To constitute burglary, the house or building must be broken or entered in the night time with intent to commit a felony. Kirby's Dig., §§ 1603-1606; 49 Ark. 514.

None of the witnesses, aside from McElroy, the accomplice, could testify that the offense was committed in the night time, and there is no sufficient corroboration of the accomplice. Kirby's Dig., § 2384, and cases cited.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. The motion to quash was properly overruled. The record is clear that the indictment was concurred in by the sixteen members of the grand jury. The record proper prevails over the showing made in the bill of exceptions. *Davidson* v. *State,* 108 Ark. 191.

2. There was no error in the admission of testimony, and it was proper to allow the prosecuting attorney to question defendant as to where he obtained the money he was seen to have two or three days after the burglary. 100 Ark. 199-202.

HART, J., (after stating the facts). Counsel for defendant moved the court to quash the indictment because it was not concurred in by twelve members of the grand jury, and assigns as error the action of the court in overruling his motion.

The record shows that the grand jury came into court, in charge of a deputy sheriff, and that all its members were present; that the indictment in question was returned in open court and was properly endorsed "A true bill" and signed by the foreman; that it was handed to the clerk and ordered filed and numbered, as the law directs.

Where an indictment is properly returned into court, it will be presumed that it was duly found with the concurrence of the requisite number of the grand jury, and the court did not err in overruling the defendant's motion to quash the indictment. *St. Louis, I. M. & S. Ry. Co.* v. *State,* 99 Ark. 1; *Nash* v. *State,* 73 Ark. 399.

It is next contended by counsel for defendant that the testimony is not sufficient to support the verdict. They first contend that there was no testimony, other than that of the accomplice, Howell McElroy, tending to show that the saloon was broken into in the night time.

The defendant himself introduced in evidence an almanac showing sunrise to have been at 4:39 o'clock on the morning of May 21, 1912. The proprietor of the saloon testified that he left there at 12 o'clock at night

and that the saloon showed evidence of having been broken into when he returned the next morning. The bartender said that he opened the saloon at 4:10 o'clock in the morning; that the glass door had been broken into since he had left the night before; and the evidence of both the proprietor and the bartender showed that whiskey and money had been taken from the saloon since it was closed up the night before. The jury might have inferred from their evidence that the saloon was broken into in the night time.

Counsel for defendant also insist that there is no evidence, other than that of Howell McElroy, tending to connect the defendant with the commission of the offense.

The proprietor of the saloon testified that Howell McElroy and the defendant came into the saloon about 11 o'clock on the night it was burglarized, and asked him to let Howell McElroy have some whiskey. He refused to do so, and the defendant told him that they were going to have it before morning if they had to take it.

Other witnesses testified that the defendant and Howell McElroy were seen together early the next morning; that they had in their possession whiskey of the same brand as that taken from the saloon, and that a few days thereafter the defendant was seen in possession of several dollars in nickels and dimes, and the proprietor of the saloon said that the money taken from it consisted of quarters, nickels and dimes.

It was also shown that Howell McElroy and the defendant were seen together shortly before and shortly after the burglary was committed.

This was a sufficient corroboration of Howell McElroy. *Celender* v. *State,* 86 Ark. 23.

Finally, it is insisted that the court erred in admitting questions concerning defendant's character.

The defendant took the stand in his own behalf, and thereby became subject to impeachment as any other witness. *Younger* v. *State,* 100 Ark. 321.

It was shown that the defendant had in his posses-

sion a few days after the burglary was committed several dollars, consisting of nickels, dimes and quarters. On cross examination the prosecuting attorney asked him where he had gotten this money and what kind of business he had been engaged in lately. The defendant responded that he had won it in a crap game. This was competent for the purpose of discrediting the defendant's testimony, and the court did not abuse its discretion in permitting the prosecuting attorney to ask the questions and requiring the defendant to answer them. *Turner* v. *State,* 100 Ark. 199; *Hollingsworth* v. *State,* 53 Ark. 387; *McAllister* v. *State,* 99 Ark. 604.

The judgment will be affirmed.